The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF
WELD, Plaintiff-Appellee,

v.

Harold ANDREWS, Weld County
Sheriff, Defendant-Appellant.

No. 83CA0409.

Colorado Court of Appeals,
Div. III.

Jan. 12, 1984.

Rehearing Denied Feb. 23, 1984.

Certiorari Denied Aug. 20, 1984.

Thomas O. David, Weld County Atty., Kathy E. Dean, Asst. County Atty., Greeley, for plaintiff-appellee.

Robert C. Burroughs, Ault, for defendant-appellant.

VAN CISE, Judge.

This is an action for a declaratory judgment to determine the status of appointed deputy sheriffs, other than the undersheriff, under the home rule charter for Weld County, Colorado. The plaintiff, Board of County Commissioners, contended that deputy sheriffs are covered by the personnel policy set forth in the Weld County policy manual, while the defendant sheriff contended he is entitled to hire and fire his deputies at will. The facts were stipulated, and the parties agreed that the court could take judicial notice of the home rule charter.

The trial court held generally in favor of the commissioners, decreeing that:

"1. The appointed deputies of the defendant Harold Andrews, as Sheriff of Weld County, Colorado, other than the Undersheriff, are employees within the meaning of the Home Rule Charter of Weld County, Colorado.

"2. The employment and dismissal of such deputies, other than the Undersheriff, are governed by the provisions of the Home Rule Charter for Weld County, Colorado, providing for the establishment of a personnel system, and the policies and rules relating to such personnel system adopted by the Board of County Commissioners of Weld County, Colorado.

"3. The Weld County Personnel Policies and Procedures presently in effect are as set forth in the Weld County Policy Manual under date of April 28, 1980, and said policies and procedures govern the employment and dismissal of such deputies, other than the Undersheriff.

"4. The provision of the Home Rule Charter for Weld County, Colorado, and the policies and procedures adopted pursuant thereto supersede general Colorado statutes relating to the employment and discharge of deputy sheriffs."

The defendant sheriff appeals. We affirm, and in so doing adopt the portions of the trial court's "Memorandum of Decision and Order" entered December 14, 1982, set forth below. The contentions of defendant are met and disposed of in that order.

"The charter was adopted by the people of Weld County pursuant to the authorization contained in Article XIV, Section 16 of the Constitution of the State of Colorado. That Section is as follows:

"Section 16. County home rule. (1) Notwithstanding the provisions of sections 6, 8, 9, 10, 12, and 15 of this article, the qualified electors of each county of the state are hereby vested with the power to adopt a home rule charter establishing the organization and structure of county government consistent with this article and statutes enacted pursuant hereto.

"(2) The general assembly shall provide by statute procedures under which the qualified electors of any county may adopt, amend, and repeal a county home rule charter. Action to initiate home rule may be by petition, signed by not less than five percent of the qualified electors of the county in which home rule is sought, or by any other procedure authorized by statute. No county home rule charter, amendment thereto, or repeal thereof, shall become effective until approved by a majority of the qualified electors of such county voting thereon.

"(3) A home rule county shall provide all mandatory county functions, services, and facilities and shall exercise all mandatory powers as may be required by statute.

"(4) A home rule county shall be empowered to provide such permissive functions, services, and facilities and to exercise such permissive powers as may be authorized by statute applicable to all home rule counties, except as may be otherwise prohibited or limited by charter or this constitution.

"(5) The provisions of sections 6, 8, 9, 10, 12, and 15 of article XIV of this constitution shall apply to counties adopting a home rule charter only to such extent as may be provided in said charter.

"Sections 6, 8, 9, 10, 12, and 15 of Article XIV of the Colorado Constitution are those sections which set forth the officers who shall be elected in each county and how they shall be chosen and compensated.

"By these constitutional provisions the people of a home rule county are given broad discretion in setting up the organization and structure of their county government. They are limited only by the requirement that the organization and structure be consistent with the constitution and statutes enacted pursuant to it.

"In terms of the functions which the county government may perform in a home rule county the constitution is much more restrictive. A home rule county must do the things that all counties must do and must provide the services all counties must provide. It may also do such additional things and provide such additional services as are specifically authorized by statute for all home rule counties.

"In response to the constitutional directive, the Forty-eighth General Assembly enacted Chapter 105, Article 28 of the Laws of 1971 governing county home rule charters. This legislation forms the basis of Colorado Revised Statutes, 1973, Title 30 Article 11 Part 5, which is still in our statutes.

"This legislation again emphasized the wide discretion possessed by the qualified electors of any county to establish the organization and structure of a county government. Few restrictions were placed upon this discretion, other than those set forth in the constitution, except that any charter was required to contain procedures for initiative, referendum, and recall. The legislation was, however, quite vague on the question of the functions which a home rule county might perform, and really add-

ed nothing to the constitutional provisions. This led to some question concerning which, if any, of the permissive county powers possessed by nonhome rule counties might also be exercised by a home rule county.

"This was the legislative situation which existed at the time of the adoption of the Home Rule Charter for Weld County, Colorado, in 1975.

"Shortly after the adoption of the Weld County Charter the legislature partially remedied the defect in the statute regarding the permissive functions which might be exercised by a home rule county by enacting certain amendments which are now part of C.R.S., 1973, section 30–11–511. These amendments essentially provided that a home rule county might exercise all of the mandatory and permissive functions of a nonhome rule county, but none others.... [O]ne of the purposes of this amendment was to validate certain provisions of the Weld County Charter which had been attacked as being beyond what was previously authorized by law.

"This legislative framework remained substantially unchanged until 1981 when the Colorado County Home Rule Powers Act, C.R.S., 1973, Title 30 Article 35, was enacted. This act appears to broaden the powers granted to home rule counties and to grant to such counties certain powers not available to nonhome rule counties.

"The court has set forth the foregoing legislative history of county home rule in Colorado, and in Weld County particularly, to stress the dual nature of the constitutional and legal basis for county home rule. The home rule counties are given broad discretion in the area of structure—creating of a frame of government, designating county officials, and establishing their relative duties within the county government. They are given much less freedom in determining what functions they may choose to have their county government perform. Until recently this area of county government function has been no broader in home rule counties than in nonhome rule counties.

"The establishment of a personnel system governing the selection, tenure and dismissal of county employees relates to structure and organization of county government, not to the functions of that government. At the time of the adoption of the Weld County Charter nothing in the Colorado Constitution prohibited or was inconsistent with the establishment of such a personnel system. Accordingly, it was within the power of the qualified electors of the county to provide for such a system in their charter, at least if it was not contrary to other provisions of general law.

"The sheriff contends that his power to select and discharge deputies is governed by C.R.S., 1973, section 30–10–506. This provision of our statutes is as follows:

"Each sheriff may appoint as many deputies as he may think proper, for whose official acts and those of his undersheriff he shall be responsible, and may revoke such appointments at his pleasure. Persons may also be deputized by such sheriff or undersheriff in writing to do particular acts; the sheriff and his sureties shall be responsible on his official bond for the default or misconduct of his undersheriff and deputies.

"In *Denver v. Rinker*, 148 Colo. 441, 366 P.2d 548 (1961), the Supreme Court of Colorado determined that the foregoing statute did not prohibit the City and County of Denver from changing the method of selection and tenure of deputy sheriffs by provisions of its charter. A merit system was approved.

"In the area of governmental structure and organization the electors of Weld County are granted similar authority to that possessed by the electors of the City and County of Denver. Accordingly, if they chose to do so, the electors of Weld County had the power to establish a personnel system for selection of deputy sheriffs. The question of whether or not they did so must be determined by an analysis of the provisions of the charter.

"The Home Rule Charter for Weld County, Colorado, contains fairly elaborate pro-

visions requiring the Board of County Commissioners to 'implement a personnel system which shall become effective no later than twelve (12) months from the effective date of this Charter.' Those provisions require that such personnel system include provisions relating to employment and promotion 'upon the basis of ability, education, training, and experience necessary to carry out the duties and responsibilities of the work to be performed.' It must also cover classification, compensation, performance, dismissal and discipline. Charter, section 4–2 (B).

"The charter provides, 'Elected officials shall make appointments to fill vacancies in their departments from a list of names certified by the personnel department to be qualified for the position to be filled.' Charter, section 4–2 (B)(6). It requires establishment of an appeal board "to which an employee may appeal his dismissal, suspension, demotion, or other grievance." Charter, section 4–2 (B)(8).

"The charter sets forth the coverage of the personnel system as follows:

"All employees of the County shall be included within the provisions of the personnel system, except the Board may, in its discretion, exclude the employees of certain divisions, and except the undersheriff and chief deputy of each elected official, temporary employees, advisors, and consultants retained by contract, the County Attorney and Assistant County Attorneys, and except as otherwise provided by law. Charter, section 4–2 (B)(7).

"Section 16–10 of the charter includes the following definitions:

"(18) Employees—All persons in county service who are not officers.

"(23) Officer—An elected official of the County.

"Applying these definitions of the charter provision can leave little doubt but that deputy sheriffs, being persons in county service who are not elected officials, are covered by the county personnel system and are entitled to its protection. The sheriff must follow the procedures set forth in that personnel system in hiring and dismissing his deputies unless the board of county commissioners decides to exclude them from the system.

"This court is not unaware that another court has come to a different conclusion regarding the applicability of the Weld County personnel system to the selection and tenure of deputy sheriffs. *Tydings v. Weld County Board of County Commissioners, et al.,* United States District Court, District of Colorado, Civil Action No. 81–M–1723.

"... This court is unable to agree with the federal court interpretation of [the Weld County] charter.

"The federal court decision appears to have been based largely upon the duties of the county sheriff defined in the Weld County Charter as follows:

"*Section 10–3—Duties.*

"(1) The County Sheriff shall appoint an Undersheriff, who shall also be a general deputy, to serve during the pleasure of the Sheriff.

"(2) The County Sheriff may appoint such other deputies as may be necessary or required to carry out the duties of the office.

"(3) The County Sheriff shall exercise all of the powers and perform all the acts and duties now required or that may hereafter be required by state law to be exercised or performed by the County Sheriff.

"(4) The County Sheriff may exercise those discretionary county functions and powers, and provide such services and facilities as may be authorized by law.

"Nothing in this enumeration of powers is contrary to the inclusion of deputy sheriffs in the county personnel system. The specific exclusion of the undersheriff from the personnel system is consistent with the other charter provisions and suggests that other deputies are included.

"Paragraphs (2), (3), and (4), of the duties of the sheriff are identical, except for the name of the officer involved, to provisions which define the duties of other county

elective officers. Thus paragraphs (2), (3) and (4), of charter section 7–2 relating to the duties of the county assessor are identical to the paragraphs set forth above, except the words 'County Sheriff' are changed to 'County Assessor'. Similar provisions appear in the sections defining the duties of county clerk, county coroner and county treasurer. This certainly indicates no intention to grant broader appointive powers to the sheriff than other county officers.

"The fact that paragraph (2) of the provisions defining the duties of these elective officers grants them the power to appoint deputies does not relieve them of the obligation imposed by another section of the charter to make such appointments in accordance with the county personnel system.

"Paragraphs (3) and (4) of the duties of the sheriff do not relate to the structural or organizational aspects of county government at all. They relate to the functions of county government and parallel the constitutional provision cited above defining the authority of home rule county governments and officers in the area of mandatory and permissive services. They were no doubt deemed necessary by the drafters of the charter because of the unsatisfactory condition of statutory law which existed at the time of the adoption of the Weld County charter. It was these provisions, among others, which were fully validated by the 1976 legislation referred to above.

"If the federal court interpretation of the Weld County charter were correct, it would largely invalidate the county personnel system as it relates to other elective officers in the county. Other elective officers in addition to the sheriff have statutory authority to appoint their deputies. Examples are C.R.S., 1973, section 30–10–403 relating to the county clerk, and C.R.S., 1973, Section 30–10–602, relating to the county coroner. The power to appoint includes the power of removal. 4 Antieau, *Local Government Law—County Law*, section 34.10 (1982). The provisions of the charter setting up a county personnel system would be largely meaningless, and the specific provision re-

quiring elective officials to comply with it would be almost completely ineffective. This court cannot adopt an interpretation which would invalidate a large section of [the Weld County] charter.

"It has been objected that even if otherwise proper, the personnel provisions are invalid because they were not adopted by ordinance. The adoption of such a policy is not one of the matters upon which the board of county commissioners is required by the charter to act upon by ordinance. Accordingly, under the terms of the charter the adoption of such a policy may be by resolution. Charter, section 3–8 (4)(b). Assuming, but not deciding, that C.R.S., 1973, section 30–35–201 (7) now requires that a home rule county act by ordinance in personnel matters, still that section was not in effect at the time of the adoption of the personnel policy in Weld county. Nothing in the 1981 statute of which the cited section is a part indicates a purpose to invalidate previously valid county actions."

For the reasons stated above, the trial court properly entered a declaratory judgment determining that deputy sheriffs in Weld County are subject to the county personnel system as set forth in the Weld County policy manual and that the sheriff must comply with such policy in appointing and dismissing deputies.

Judgment affirmed.

STERNBERG and METZGER, JJ., concur.