Ruth Y. KELLY, et al., Plaintiffs,

v.

**MACON–BIBB COUNTY BOARD OF ELECTIONS, et al., Defendants.**

**Civ. A. No. 83–27–3–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

April 29, 1985.

S. Phillip Brown, Macon, Ga., for plaintiffs.

Wallace Miller, Jr., Ed Sell, Jr., Macon, Ga., for defendants.

OWENS, Chief Judge:

The public water supply of Bibb County, Georgia has been fluoridated pursuant to a duly enacted law of the State of Georgia. *See* O.C.G.A. § 12–5–175 (1982). That same law provides that any municipality or county by local referendum may remove itself from the requirement of fluoridation. *Id.* § 12–5–175(a). In order to call such a referendum, the statute requires a

> petition of 10 percent of the registered voters in such political subdivision who voted in the last general election.

*Id.*

Plaintiffs purport to represent a class of Bibb County residents who desire to call such a referendum. The undisputed facts reveal that in March of 1982, plaintiffs presented to defendants a petition bearing the signatures of 6,164 individuals. The parties further agree that "the last general election" which preceded presentation of the petition was the November, 1980, Presidential election, in which 49,047 registered voters of Bibb County voted.

Upon review of the petition, defendants excluded certain signatures for reasons not presently in dispute. Additionally, defendants excluded 793 individuals who were not

registered to vote in Bibb County in the 1980 general election, and 325 individuals who in fact did not vote in the 1980 general election. These exclusions were based on defendants' construction of § 12–5–175(a) to the effect that the petition must be signed by individuals who were registered to vote and who in fact voted in Bibb County in the 1980 general election. Based upon these exclusions, plaintiffs' petition fell short of the required 4,904 signatures, and their request for a referendum was denied.

Plaintiffs contest defendants' construction of 12–5–175(a). Plaintiffs argue that there is no compelling justification for counting only those persons who actually voted in Bibb County in 1980. Plaintiffs assert that this construction "disenfranchises" those persons registered to vote in Bibb County at the time they signed the petition in March, 1982, but who, for various reasons such as age or prior residence, were not registered to vote in Bibb County in 1980. Plaintiffs assert that such a construction and disenfranchisement is unconstitutional; alternatively, plaintiffs assert a pendent state law claim in which they request this court to interpret § 12–5–175(a) to hold that the petition need be signed only by persons registered to vote in Bibb County at the time of signing, and that their number must equal 10% of the persons who actually voted in Bibb County in the 1980 general election. Defendants, while disputing this interpretation, concede that if it were adopted a referendum must be held based upon the 1982 petition. Defendants have moved for summary judgment against the plaintiffs.

## ISSUES PRESENTED

The parties agree that no disputed issues of material fact preclude consideration of defendants' motion for summary judgment. At issue are questions of law concerning the constitutionality of defendants' construction of the relevant statute. Plaintiffs challenge this construction on both First and Fourteenth Amendment grounds. Additionally, plaintiffs seek to invoke pendent jurisdiction over their state law claim of statutory construction.

## CONCLUSIONS OF LAW

### Plaintiffs' Constitutional Claims

While plaintiffs' complaint alleges impairment of numerous constitutional rights, all claims are premised upon an alleged violation of the equal protection clause of the Fourteenth Amendment. The contested statute, under defendants' construction, recognizes a specific class of persons eligible to petition the county for a local referendum, and excludes all persons not within that class. The statute treats the two classes differently on account of three possible factors: duration of county residence, age, and whether an individual actually exercised his right to vote in the last general election. Plaintiffs argue that those excluded by the classification are deprived of a fundamental constitutional right—the right to vote—and that such discrimination violates the equal protection clause absent proof of a compelling state interest. *See, e.g., Dunn v. Blumstein,* 405 U.S. 330, 342, 360, 92 S.Ct. 995, 1003, 1012, 31 L.Ed.2d 274 (1972) (Tennessee one year durational residency requirement for voting in state election violates the equal protection clause under strict equal protection standard of review).

Plaintiffs, however, have not been prohibited from exercising a fundamental constitutional right. This is *not* a "right to vote" case; referendums, unlike general elections for a representative form of government, are not constitutionally compelled.[1] The fluoridation program was im-

---

1. The right to vote in a general election, *i.e.,* the right to participate in *representative* government, is a fundamental constitutional right that may not be abridged absent a compelling state interest. *Kramer v. Union Free School District,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). A referendum, however, is a form of direct democracy. Our constitution insures a representative form of government, not a direct democracy. *See* L. Tribe, American Constitu-

plemented by an Act of the Georgia General Assembly. The state, consistent with the Constitution, could have directed that exclusions from the Act's coverage be available only by legislative action. By allowing an "opt out" procedure by way of local referendums, the state did not create a fundamental right protected by the federal Constitution. In establishing eligibility requirements for those voters authorized to call a local referendum by way of petition, the state may not discriminate on the basis of "suspect" classifications such as race. However, the classifications established by defendants' construction of § 12–5–175(a) do not involve such suspect classifications. There being no fundamental constitutional right to call a local referendum, defendants are not required to establish a compelling state interest in support of their construction of the challenged statute.

■ The court now turns to the question of whether defendants' classification is reasonably related to a permissible state interest. Defendants allege that the statute seeks to insure that the administrative burden and expense of a local referendum will not be invoked absent the legitimate concern of a substantial number of concerned citizens active in the local political process. By requiring a petition signed by 10% of the registered voters who actually voted in the last election, defendants argue that evidence of legitimate public concern is more convincingly demonstrated. The court finds this to be a permissible state purpose. It is important to note that *if* a referendum is properly called, there is no extraordinary restriction on those eligible to vote in the referendum itself; registration at the time of the referendum is all that would be required. Further, plaintiffs were only 400 signatures short of the required number. They could have attempted to obtain additional signatures of individuals qualified under defendants' construction. Instead, they chose to litigate the issue and aban-

tional Law, § 13–17 at 773 (1978) ("There is, after all, no absolute constitutional requirement that a change be instituted by a political unit whenever a majority of the people in the unit favor it...."). Where a state provides for an

doned their solicitations. Under all of these circumstances, plaintiffs' constitutional rights have not been abridged by defendants' construction of § 12–5–175(a).

*Plaintiffs' Pendent State Law Claim*

■ Plaintiffs request this federal district court to resolve their dispute with defendants by employing state law rules of statutory construction, apart from any federal question jurisdiction. This court declines to do so. The exercise of pendent jurisdiction is always discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In this case, two important factors govern this court's exercise of discretion. First, the federal constitutional claim, which supports pendent jurisdiction over the state law claim, by this order has been resolved adverse to plaintiffs prior to trial. Under these circumstances, the pendent claim should be dismissed as well. *Id.* at 726, 86 S.Ct. at 1139. Second, and most importantly, federal courts should abstain from resolving unsettled questions of state law which involve the state's own political process. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 332–33, 63 S.Ct. 1098, 1106–07, 87 L.Ed. 1424 (1943). The interests of comity between the state and federal systems demand that plaintiffs' claim be resolved in a Georgia court. Accordingly, plaintiffs' pendent state law claim is dismissed.

## CONCLUSION

Defendants' motion for summary judgment on plaintiffs' Counts I and III is hereby GRANTED. Fed.R.Civ.P. 56. Count II of plaintiffs' complaint is hereby DISMISSED for lack of appropriate federal jurisdiction. There being no issues remaining for trial, let final judgment be entered in favor of defendants.

expression of direct democracy, such as by initiative or referendum, it does so as a matter of legislative grace; the right to participate in such a process is not fundamental to our Constitution.