**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SAVE PALISADE FRUITLANDS, a
Colorado unincorporated nonprofit
association; HARRY C. TALBOTT;
GALEN R. WALLACE; ALLEN M.
(MAC) WILLIAMS,

        Plaintiffs - Appellants,

    v.

MONIKA TODD, in her official
capacity as County Clerk of Mesa
County, Colorado; MESA COUNTY
BOARD,

        Defendants - Appellees.

No. 00-1423

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 99-Z-2248)**

---

Richard W. Daily (Stephen K. ErkenBrack, with him on the briefs), Hale
Hackstaff Tymkovich & ErkenBrack, L.L.P., Denver, Colorado, appearing for
Appellants.

Valerie J. Robison, Assistant Mesa County Attorney (M. Lyle Dechant, Mesa
County Attorney, with her on the brief), Mesa County Attorney's Office, Grand
Junction, Colorado, appearing for Appellees.

---

Before **TACHA**, Chief Judge, **GARTH**,[*] and **BRISCOE**, Circuit Judges.

---

**TACHA**, Chief Judge.

---

Appellants Save Palisade FruitLands and three of its members brought this suit under 42 U.S.C. § 1983, after the Mesa County Clerk, appellee Monika Todd, denied appellants' request to place a land-use proposal on the ballot as a county-wide initiative. Appellants argued that Colorado law, which grants the power to initiate legislation to the electors of home rule counties, but not to those of statutory counties, violates the Equal Protection Clause of the Federal Constitution. The United States District Court for the District of Colorado concluded that there was no denial of equal protection, and it therefore granted Todd's motion for summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I.  Background

A.  The Structure of the Colorado Initiative.

In 1910, the people of Colorado adopted article V of the Colorado Constitution and reserved the powers of initiative and referendum. Byrne v. Title Bd., 907 P.2d 570, 576 (Colo. 1995) (en banc) (Mullarkey, J., dissenting). Article

---

[*] The Honorable Leonard I. Garth, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

V, subsection 1(2) of the Colorado Constitution provides in part that "[t]he first power hereby reserved by the people is the initiative." Article V, subsection 1(9) further clarifies the scope of this reserved power: "The initiative and referendum powers reserved to the people by this section are hereby further reserved to the registered electors of every city, town, and municipality as to all local, special, and municipal legislation of every character in or for their respective municipalities."

The Colorado Constitution does not explicitly reserve the right of initiative at the county level. In general, counties in Colorado are simply political subdivisions of the state government that possess only those functions that are granted to them by the constitution or by statute, along with implied powers necessary to carry those functions out. Pennobscot, Inc. v. Bd. of County Comm'rs, 642 P.2d 915, 918 (Colo. 1982) (en banc); Dellinger v. Bd. of County Comm'rs, 20 P.3d 1234, 1237 (Colo. Ct. App. 2000). Colorado courts have rejected any argument that the general reservations of power in article V, subsections 1(1) and 1(2) might be construed to grant county governments the power to provide for initiatives. Dellinger, 20 P.3d at 1237-38 (considering, and then rejecting, various arguments that would authorize and require counties to provide for initiatives); see also County Rd. Users Ass'n v. Bd. of County Comm'rs, 987 P.2d 861, 863 (Colo. Ct. App. 1998) (noting in dicta that "the

-3-

power of initiative and referendum is not generally reserved to the electors as to

county governments"), rev'd on other grounds, 11 P.3d 432 (Colo. 2000) (en

banc).[1]

The constitutional scheme is complicated, however, by statutory grants of

the initiative power to the electors of county governments in limited contexts.  In

some instances, this grant is given to the electors of all counties with respect to

specific types of legislation.[2]  Colorado also distinguishes between statutory

counties and home rule counties with respect to the power to initiate general

legislation, and this distinction is the central focus of this litigation.

All counties in Colorado are initially created as "statutory" counties.  These

counties perform basic governmental functions such as managing the property of

the county, maintaining streets and street lighting, creating mass transit, and

making limited contracts for the fulfillment of these functions.  Colo. Rev. Stat. §

---

[1]When presented with a question of Colorado law that the Colorado
Supreme Court has not resolved, our task is to predict how that court would rule
on the issue.  Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir.
1984).  In carrying out this task, [w]e must also follow any intermediate state
court decision unless other authority convinces us that the state supreme court
would decide otherwise."  Id.; see also Comm'r v. Estate of Bosch, 387 U.S. 456,
465 (1967).  Appellants have provided us with no persuasive reason to conclude
that the Colorado Supreme Court would reach a decision contrary to Dellinger,
which we therefore follow as Colorado law.

[2]For example, electors may initiate legislation regarding county sale and
use taxes, and for the creation of public improvement districts.  Colo. Rev. Stat.
§§ 29-2-104, 30-20-505.

30-11-101 (1).  A statutory county is governed by a board of county commissioners, who are constitutional officers elected in accordance with article 14, section 6 of the Colorado Constitution.  The board has several specifically enumerated powers, such as levying taxes and providing for the maintenance of county buildings.  Colo. Rev. Stat. § 30-11-107.  It also has the power to control the zoning of land not incorporated into cities.  Colo. Rev. Stat. § 30-28-102.

However, the Colorado Constitution provides a procedure for "statutory" counties to become "home rule" counties and thereby assume a greater degree of self-government.  Colo. Const. art. XIV, § 16.  To become a home rule county, a statutory county must adopt a home rule charter, which must be approved by a vote of the electors in the county.  Id.  While statutory counties have government structures that are specifically delineated in the state constitution, home rule counties are largely freed from these constitutional dictates.  Bd. of County Comm'rs v. Andrews, 687 P.2d 457, 458 (Colo. Ct. App. 1984) (noting that article XIV, section 16 frees home rule counties from the provisions of sections 6, 8, 9, 10, 12, and 15 of article XIV of the constitution, which set forth the type of officers who shall be elected in each county and how to choose and compensate them).  While a home rule county still "must do the things that all counties must do and must provide the services all counties must provide," id., there are numerous provisions in the Colorado statutes that either allow home rule counties

to expand upon the powers already granted to statutory counties or grant home rule counties new powers altogether. For example, home rule counties have broader powers to incur indebtedness than statutory counties have. Compare Colo. Rev. Stat. § 30-35-201(6) (specifying procedures for home rule counties to incur general debt), with Colo. Rev. Stat. § 30-11-107(1)(dd) (allowing statutory counties to incur debt to finance energy-saving measures). Home rule counties have the power to provide for "public concerts and entertainments" and may advertise to attract tourists, id. § 30-35-201(3), (4), while statutory counties have no similar powers. These are but examples, and many other differences are apparent from even a cursory comparison of sections 30-35-201 and 30-11-107.

Among these many differences is the scope of the power of initiative. The electors of statutory counties in Colorado may only initiate legislation with respect to a very limited range of issues. E.g., Colo. Rev. Stat. 29-2-104. Home rule counties, by contrast, are statutorily required to provide for the initiative and referendum of all measures under the same strictures required for statewide ballot measures. Col. Rev. Stat. § 30-11-508. The difference in this grant of powers is what gives rise to this litigation.

B.    Save Palisade FruitLands

Mesa County, Colorado is a statutory county situated on the border of Colorado and Utah. It contains several cities, including Palisade, Fruita, and the

-6-

largest city in the county, Grand Junction. It is famous for its fruit production, especially in the eastern areas of the county. Land use in the county is governed by the Mesa County Planning Commission, which adopts land codes governing zoning and the divisibility of property.

Appellant Save Palisade FruitLands ("Save Palisade") is an unincorporated nonprofit association comprised of registered voters in Mesa County. Appellants Harry Talbott and Allen Williams are peach growers, and Galen Wallace is a viticulturist. All three are members of Save Palisade.[3] Throughout the 1990s, they and other farmers tried to halt the encroachment of residential subdivisions in Mesa County by attempting to place greater restrictions upon the ability of landowners to subdivide their property. After years of having their efforts rejected, and after several contentious public meetings debating the utility of such measures, Save Palisade and various farmers attempted to place a measure on the Mesa County ballot that would restrict the ability of landowners to subdivide their land. On November 16, 1999, Monika Todd, the Mesa County Clerk, refused to place the proposed initiative on the ballot. Todd indicated that she could find no authorization for countywide initiatives in a statutory county such as Mesa County.

---

[3]For this reason, we will, for simplicity's sake, sometimes refer simply to Save Palisade as the appealing party.

Save Palisade then brought suit against Todd and the Board of County Commissioners of Mesa County in the United States District Court for the District of Colorado. The court granted the defendant's motion for summary judgment shortly after the Colorado Court of Appeals issued its ruling in Dellinger v. Board of County Commissioners, 20 P.3d 1234, 1237-38 (Colo. Ct. App. 2000), which held that the Colorado Constitution did not authorize the electors of statutory counties to initiate legislation. Save Palisade then sought to have the measure certified as a statewide ballot initiative. On December 6, 2000, the Ballot Title Setting Board determined that the measure was not a "statewide" measure, and it therefore refused to place the initiative on the ballot.

Appellants then brought this appeal, claiming that by granting the power of initiative to the electors of home rule counties but not to those of statutory counties, the Colorado courts denied the electors of statutory counties the equal protection of the laws.

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001). Summary judgment is proper only if the evidence, reviewed in the light most favorable to the party opposing the

motion, demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

B.     The Appropriate Level of Fourteenth Amendment Scrutiny

Save Palisade argues that Colorado's decision to provide the initiative power to home rule counties but not statutory counties is subject to strict scrutiny under the Fourteenth Amendment's Equal Protection Clause. U.S. Const. amend. XIV, § 1 ("No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."). If strict scrutiny applies, Colorado's statute must be narrowly tailored to further a compelling government interest. Goetz v. Glickman, 149 F.3d 1131, 1140 (10th Cir. 1998). If no heightened scrutiny applies, the statute need only be rationally related to a legitimate government purpose. Kinnell v. Graves, 265 F.3d 1125, 1128 (10th Cir. 2001). We subject governmental classifications to strict scrutiny under the Equal Protection Clause only if they target a suspect class or involve a fundamental right. Goetz, 149 F.3d at 1140.

1.     Suspect Class

When legislation categorizes persons based on suspect classifications, such as race and national origin, we apply strict scrutiny. Okla. Educ. Ass'n v. Alcoholic Beverage Laws Comm'n, 889 F.2d 929, 932 (10th Cir. 1989). When

legislation categorizes persons based on "quasi-suspect" classifications, such as gender and illegitimacy, we apply intermediate scrutiny. Id. Finally, when legislation categorizes persons on the basis of a non-suspect classification, we apply rational basis review. Id. In deciding whether to recognize additional classifications as suspect, courts traditionally look to see if the classification is "based on characteristics beyond an individual's control," id., and whether the class is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973).

The classification here is statutory counties, in contrast to home rule counties, and citizens of the two types of counties are treated differently in Colorado. Status as a statutory county, however, has not been recognized as a suspect or quasi-suspect classification. Moreover, citizens of statutory counties lack the characteristics of a suspect class. Id. Being a statutory county is not a characteristic beyond Mesa County's control, as it can choose to become a home rule county. Cf. Okla. Educ. Ass'n, 889 F.2d at 932. Mesa County's citizens are free to work to effect this change. Neither the county nor its citizens claim to suffer disabilities, have a history of unequal treatment, or be politically

powerless. Cf. Rodriguez, 411 U.S. at 28. Thus, Save Palisade and its members are not entitled to heightened scrutiny on the basis of a suspect classification.

2.    Fundamental Rights

Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution. Okla. Educ. Ass'n, 889 F.2d at 932. Save Palisade argues that its inability to bring an initiative in Mesa County burdens its members' fundamental constitutional rights to free speech and to vote. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 336 n.1 (1995) (acknowledging that free speech is a fundamental right); Reynolds v. Sims, 377 U.S. 533, 554 (1964) (acknowledging that the right to vote is a fundamental right).

Here, there are two contexts within which the appellants' rights to free speech and to vote arguably could be implicated. First, it could be argued that the fundamental rights to speech and to vote are implicated within a broader right to bring an initiative, and that the power of initiative is therefore a fundamental right. However, nothing in the language of the Constitution commands direct democracy, and we are aware of no authority supporting this argument. In fact, every decision of which we are aware has held that initiatives are state-created rights and are therefore not guaranteed by the U.S. Constitution. E.g., Taxpayers

United for Assessment Cuts v. Austin, 994 F.2d 291, 295 (6th Cir. 1993) (citing

Meyer v. Grant, 486 U.S. 414, 424 (1988)); Kelly v. Macon-Bibb County Bd. of

Elections, 608 F. Supp. 1036, 1038 & n.1 (M.D. Ga. 1985).  We agree with these

courts' reasoning and reject this argument.

Second, it may be argued that regulations on the power of initiative violate

the fundamental rights to free speech and to vote.  It is true that the

constitutionally guaranteed rights of free speech and voting may be implicated by

attempts to regulate initiative schemes.  See, e.g., Meyer, 486 U.S. at 424-25  .

The mere fact that the state created a right to an initiative process in home rule

counties, however, does not require that an initiative process be granted to all

political subdivisions or with respect to all subjects.  Skrzypczak v. Kauger, 92

F.3d 1050, 1053 (10th Cir. 1996) ("[Plaintiff's] right to free speech in no way

depends on the presence of [her initiative] on the ballot.  Moreover, she cites no

law, and we find none, establishing a right to have a particular proposition on the

ballot.").  In other words, the right to free speech and the right to vote are not

implicated by the state's creation of an initiative procedure, but only by the state's

attempts to regulate speech associated with an initiative procedure, which is not

the case here. [4]  There is no initiative scheme in place in statutory counties, so

_____

[4]Other courts have agreed with this analysis.  In Kelly, for example, the
plaintiffs brought an equal protection claim, alleging that their right to vote was
(continued...)

-12-

there cannot be an unlawful attempt to regulate that scheme.

The cases that Save Palisade cites in support of its argument are inapposite. First, none of these cases involves an equal protection claim. Second, and perhaps most important, all of these cases involve situations where a political subdivision had already been granted the power of initiative and the state attempted to regulate the speech associated with the initiative process. For example, in the primary First Amendment case cited by appellants, Meyer v. Grant, the Court struck down a law banning payments to petition circulators. Unlike the instant case, however, Meyer involved a situation where the state had already granted electors the power of initiative. 486 U.S. at 424. Moreover, the Meyer Court struck down the law not because of anything unique to an initiative scheme, but rather because it limited the number of messengers available to

_____

[4](...continued)
burdened by procedural restrictions on their right to bring a referendum. 608 F. Supp. 1036. The court rejected this argument, holding that it was "not a 'right to vote' case" as plaintiffs asserted, but a referendum case, and that referenda "are not constitutionally compelled." Id. at 1038. The court further noted that the Constitution protects the right to vote in a general election, which is part of the right to representative democracy. Id. at 1038 n.1. By contrast, the court stated, initiatives and referenda are expressions of direct democracy that are not guaranteed by the Constitution. Id. Thus, alleging a violation of free speech or voting rights does not transform what is essentially an initiative case into a voting rights case, and thereby trigger strict scrutiny. See also Stone v. City of Prescott, 173 F.3d 1172, 1175-76 (9th Cir. 1999) (finding that the First Amendment is not implicated when the plaintiffs challenge the scope of the referendum right rather than challenging regulations on the exercise of that right).

-13-

spread core political speech.    Id. at 422-23.

The other free speech case cited by Save Palisade,    Buckley v. American Constitutional Law Foundation   , 525 U.S. 182  (1999), is likewise distinguishable. There, the Court held that a state's requirement that circulators of initiative petitions wear name badges infringed upon the circulators' rights to anonymous free speech.   Id. at 199-200.  Like   Meyer, Buckley  involved an unconstitutional regulation of speech that happened to occur in the context of an existing initiative scheme.

Meyer and Buckley  thus establish that, "where the people reserve the initiative or referendum power, the exercise of that power is protected by the First Amendment."   Stone, 173 F.3d at 1175 (9th Cir. 1999);    see also  Austin, 994 F.2d at 296-97 ("Unlike the challenged provisions in     Meyer, Michigan's initiative system does not restrict the means that the plaintiffs can use to advocate their proposal.").  They do    not establish that when the power of initiative is created for one political subdivision, it must necessarily be created for all political subdivisions. [5]  The Colorado Court of Appeals determined in     Dellinger  that the

_____

[5]It is worth noting the potentially broad remedy that petitioners seek.  If we are required to apply strict scrutiny to Colorado's decision to grant the electors of statutory counties the power of initiative, then presumably we would be forced to apply the same level of scrutiny to school boards, fire districts, administrative agencies, and a host of other decision-making bodies whose decisions cannot, under the present scheme, be changed by direct democracy.  We decline to make a
(continued...)

-14-

citizens of Colorado have not reserved the power of the initiative as to statutory counties, and that statutory counties therefore do not have the power of initiative. Because we are unpersuaded that the Colorado Supreme Court would disagree , we follow the Dellinger court's determination of state law. Comm'r v. Estate of Bosch, 387 U.S. 456, 465 (1967); Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir. 1984).[6] Because there is no petition process being regulated, and because there is no federal right to have such a process created, we find that the Meyer and Buckley analysis provides no basis for strict scrutiny.

Nor are the "right-to-vote" cases cited by petitioner any more persuasive. These cases establish conclusively that "'the right to vote in an election is protected by the United States Constitution against dilution or debasement.'" Hellebust v. Brownback, 42 F.3d 1331, 1333 (10th Cir. 1994) (quoting Hadley v.

---

[5](...continued)
ruling with such far-reaching implications.

[6]Appellants repeatedly advance the proposition that Colorado's gradual delegation of legislative powers to counties represents an attempt to constrict the people's reserved powers in the constitution. In appellants' view, the increased role of county government effectively has resulted in the deprivation of citizens' right to initiate legislation on issues that previously would have been handled at the state level, and as such, would have been subject to the initiative.

The Colorado Court of Appeals addressed and rejected this precise argument in Dellinger, 20 P.3d 1234, 1237-38 (Colo. App. 2000), and appellants' argument has not persuaded us that the Colorado Supreme Court would rule otherwise. Appellants do not explicitly argue that the scope of the initiative process may not be constricted once granted without violating the federal Constitution. As such, we leave the alleged constriction of the right to initiative to state courts.

-15-

Junior College Dist. , 397 U.S. 50, 54 (1970)).  They do not establish that every political subdivision must decide questions in the exact same manner.        Reynolds v. Sims , the first case cited by appellants, dealt with a situation where legislative districts were apportioned with grossly disproportionate numbers of voters in each district.  377 U.S. 533, 537-53 (1964).  As a result, individual voters in districts with small numbers of citizens effectively had disproportionate representation in the state House and Senate as compared to voters in districts with large numbers of voters.  See also  Gray v. Sanders  , 372 U.S. 368, 379-80 (1963) (invalidating Georgia primary scheme where candidates were selected under a "county unit" system that effectively weighted rural votes more heavily than urban votes).  The other case cited by appellants,     Bush v. Gore  , 531 U.S. 98 (2000), involved a situation where ballots for a statewide post from different counties were recounted under disparate standards, raising the possibility that voters who cast identical ballots would have their votes treated differently when choosing electors for president.   Id. at 106-09.

Both of the cases Save Palisade cites thus involve situations where two or more classes of voters cast votes on the same issue or for the same office, and one class's votes were effectively diluted.  That is simply not the case here.  While voters in home rule counties may have the ability to vote directly on county-wide measures affecting their own county – an ability not shared by their statutory

-16-

county analogues – this in no way dilutes the votes of the electors of statutory counties.  The reason is simple: Unlike the voters in Bush and in Reynolds, the voters in statutory and home rule counties never have their votes weighed differently on the same question.  A statewide ballot is the only opportunity for true comparison.  When that occurs, all voters, whether they reside in statutory or in home rule counties, are given an opportunity to vote.  We can find no burden on a fundamental right to vote under such a scheme.

Like the appellant in Skrzypczak v. Kauger, Save Palisade and its members are still free to express their view that Mesa County's land use process needs to be changed, and they have thus suffered no burden on their right to free speech. 92 F.3d 1050, 1053 (10th Cir. 1996) ("[T]he Oklahoma Supreme Court has not prevented Skrzypczak from speaking on any subject.  She is free to argue against legalized abortion, to contend that pre-submission content review of initiative petitions is unconstitutional, or to speak publicly on any other issue.").  Nor have their rights to vote been diluted with respect to any other citizens of Colorado. Therefore, no fundamental right has been burdened.

C.    Rational Basis Review

Having decided that the category created by Colorado infringes upon no

federal fundamental right, [7] and having found no suspect classification, we evaluate Colorado's allocation of the power of initiative under minimal scrutiny. Under this standard, the classification need only bear a "rational relation to some legitimate end to satisfy the Equal Protection Clause." Kinnell v. Graves, 265 F.3d 1125, 1128 (10th Cir. 2001) (quoting Romer v. Evans, 517 U.S. 620, 631 (1996)). We examine the statute to ensure that the state has sufficiently "treat[ed] like cases alike," and we will not act to keep a state from "treat[ing] unlike cases accordingly." Crider v. Bd. of County Comm'rs, 246 F.3d 1285, 1288 (2001) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532 (10th Cir.1998)).

Appellants ask us to compare apples and oranges when comparing home rule and statutory counties. As noted at the outset of this opinion, home rule counties have a broader range of powers than statutory counties. Moreover, home rule counties were created in order to give citizens of unincorporated areas a greater degree of autonomy in local affairs than they previously enjoyed. Both of these ends – facilitating a broader degree of powers and enhancing local autonomy – are legitimate government purposes. Granting the power of initiative

---

[7]We would again reiterate that any potential right to an initiative is created at the state level only and does not involve a federal right. Colorado courts have clearly stated that this right does not exist at the statutory county level, see supra, and we accept that construction of the Colorado Constitution. Any complaint that a state right has somehow been diluted or that the Colorado Court of Appeals has "re-written the Colorado constitution" must be directed to the Colorado Supreme Court.

-18-

to home rule counties and not statutory counties could advance both of these ends, and is therefore rationally related to either purpose.

It appears from a single mention in appellants' brief that the citizens of Logan County voted to place term limits on its Board of Commissioners. This does not change our analysis. One isolated, unchallenged incident in which the electors of one statutory county enacted legislation by an initiative does not give rise to an equal protection violation. We also cannot help but observe that the Logan County initiative was voted on in 1998, at least two years before the Colorado Court of Appeals' decision in Dellinger. Thus, at the time of the Logan County initiative, there was no controlling legal authority that clearly forbade statutory counties from enacting legislation through an initiative process. Absent evidence that such initiatives are still occurring in some statutory counties in the face of what is now clear legal authority from the Colorado Court of Appeals, we refuse to find that Colorado is enforcing its laws in an arbitrary or irrational manner in violation of the Equal Protection Clause.

## III. Conclusion

Appellants are still not without recourse. They can attempt to change the Colorado statute to grant the power of initiatives to statutory counties. They can attempt to have Mesa County adopt a home rule charter, thereby ensuring the right to initiate legislation. However, for the reasons stated above, the Equal

-19-

Protection Clause of the Fourteenth Amendment does not command Colorado to grant the power of initiative to the electors of statutory counties simply because it has granted that power to the electors of home rule counties. The district court properly granted summary judgment to appellees, and its decision is therefore AFFIRMED.