*643 Justice LEE,
concurring in the judgment:
137 I concur in the court's judgment upholding the constitutionality of the ballot initiative amendments adopted in Senate Bill 165. But I disagree with the standard set forth in the majority opinion and write separately to articulate the standard that I would apply.
(38 The controlling constitutional provision at issue here is unusual. It prescribes both a right to an initiative and a legislative power to regulate the exercise of that right. Thus, under article VI section 1 of the Utah Constitution, our citizens have a right to "initiate any desired legislation," but the legislature also possesses the express authority to regulate the "numbers," "conditions," "manner," and "time" for placement of initiatives on the ballot. Urax Const. art. VI, § 1(2)(b). We must honor both provisions. To do so, in my view, we must (1) vigorously protect the individual right to "initiate any desired legislation," by upholding ballot access for any initiatives plausibly within the legislative power as defined in Carter v. Lehi City, 2012 UT 2, 269 P.3d 141; and also (2) defer to the legislature's exercise of its delegated authority to regulate as to numbers, conditions, manner, and time.
T39 To reconcile these two mandates, I would defer to the legislature's regulation of the initiative process except in cireumstances where such regulation forecloses any meaningful possibility for the people to exercise the power reserved to them in article VI, section 1. In other words, in my view we should yield broad deference to the legislature to determine how best to regulate the initiative process (as to numbers, conditions, manner, and time). But that deference should yield to the right of the people to initiate desired legislation in cireumstances where the legislature's regulation forecloses any meaningful channels for the actual vindication of the people's reserved power.
T 40 This standard seems to me to follow from the twofold structure of article VI, seetion 1. By generally deferring to the legislature, we respect the constitution's express reservation of legislative power, And by withholding deference in cases where the legislature's regulation blocks the people's access to meaningful channels for exercising their reserved power, we also respect the constitutional reservation of this right.
141 The standard applied by the majority seems to me to be incompatible with the text and structure of article VI, section 1. In light of the express reservation of the legislature's prerogative of regulating the initiative process, I cannot see how the courts can assert the authority to (a) assess the extent of any "undue burden" imposed by the legislature's regulation of the initiative process, (b) evaluate whether any legislative regulation is "reasonable" or "reasonably" advances a legislative purpose, or (c) "weigh the extent to which the right of initiative is burdened against the importance of the legislative purpose." Supra 1% 10, 12, 18-24 (applying and extending the standard set forth in Utah Safe to Learn-Safe to Worship Coal., Inc. v. State, 2004 UT 32, 94 P.3d 217). As a general rule, these are questions for the legislature. Under a constitutional provision recognizing legislative authority to regulate the terms and conditions of the exercise of the initiative power, the courts are in no position to second-guess the legislature's judgments as to the weight of competing considerations, or the reasonableness of the legislature's judgments.
142 Again, deference to the legislature should not be absolute. But in light of the text and structure of the constitution, we cannot properly assess the legislature's judgments de novo. We should step in only in the rare cireumstance in which the legislature's attempts to regulate process effectively abrogate the reserved right of the people to initiate desired legislation.
148 The majority's standard-articulated in Safe to Learn and extended today-appears to have been imported from state and federal equal protection and due process precedent.[1] But there are no equal protec *644 tion or due process issues before us today.[2] This case arises exclusively under the Initiative Clause of the Utah Constitution. And that clause, as noted above, protects both the people's initiative power and the legislature's authority to regulate the initiative process.
44 I would apply this standard to our evaluation of this case. And I would affirm on the ground that plaintiffs have failed to present any evidence that the restrictions imposed by the legislature in the exercise of its constitutional prerogative to regulate the numbers, conditions, manner, or time for the ballot initiative process effectively precluded them from getting their initiative on the ballot. See supra 121 (noting that plaintiffs have not presented "any evidence of the practical effect" of the legislation in question).

. See Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 LEd.2d 1 (1992) (stating that "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest"); Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 874, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (adopting an "undue burden" standard for due process analysis under *644 which "[oJnly where state regulation imposes an undue burden ... does the power of the State reach into the heart of the liberty protected by the Due Process Clause"); Mountain Fuel Supply Co. v. Salt Lake City Corp., 752 P.2d 884, 890 (Utah 1988) (under our state equal protection analysis, a statute is constitutional if its classification is "a reasonable one and bears a reasonable relationship to the achievement of a legitimate legislative purpose"). «

. Nor is there a basis for the court's standard in the First Amendment. Established free speech jurisprudence prescribes heightened scrutiny only for laws regulating political speech by initiative proponents; the First Amendment has no application to laws regulating the initiative lawmaking process itself. ''The distinction is between laws that regulate or restrict the communicative conduct of persons advocating a position in a referendum, which warrant strict scrutiny, and laws that determine the process by which legislation is enacted, which do not." Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1099-100 (10th Cir.2006); see also Save Palisade Fruitlands v. Todd, 279 F.3d 1204, 1211 (10th Cir.2002) ("[The right to free speech and the right to vote are not implicated by the state's creation of an initiative procedure, but only by the state's attempts to regulate speech associated with an initiative procedure...."); Biddulph v. Mortham, 89 F.3d 1491, 1497 (11th Cir.1996) ("'The cases do say that heightened First Amendment scrutiny should be applied to certain state regulations of ballot initiatives, but they distinguish between regulation of the circulation of petitions-which is 'core political speech' -and a state's general initiative regulations.. .."}.