TAXPAYERS UNITED FOR
ASSESSMENT CUTS, et al.,
Plaintiffs–Appellants,

v.

Richard H. AUSTIN, et al.,
Defendants–Appellees,

Citizens for Education Ballot Question
Committee, Intervening Defendant–
Appellee.

No. 92–1854.

United States Court of Appeals,
Sixth Circuit.

Argued March 23, 1993.

Decided June 1, 1993.

Rehearing Denied July 1, 1993.

---

Timothy Downs (argued and briefed), Bethesda, MD, for plaintiffs-appellants.

Gary P. Gordon, Asst. Atty. Gen. (argued and briefed), Lansing, MI, for defendants-appellees.

Kevin J. Moody (argued and briefed), Michael J. Hodge, Miller, Canfield, Paddock & Stone, Lansing, MI, for Intervening defendant-appellee.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

In this action under 42 U.S.C. § 1983 (1988), the plaintiffs, Taxpayers United for Assessment Cuts ("Taxpayers") and several individuals who are registered voters in Michigan, allege that their First and Fourteenth Amendment rights were violated when the Michigan Board of State Canvassers ("Board") refused to certify their proposed initiative for submission. They now appeal from an order of the district court dismissing their complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, we **AFFIRM** the district court.

## I

Taxpayers, one of the plaintiffs, is a non-profit, unincorporated Michigan association that circulated an initiative petition in Michigan. If adopted, its proposal would reduce property tax assessments and give Michigan circuit courts jurisdiction over property tax assessment disputes. The other plaintiffs are registered voters in Michigan who support the initiative. The original named defendants are state officials who are charged with enforcing Michigan election laws. A group called Citizens for Education Ballot Question Committee ("Citizens"), which was formed to oppose the initiative advocated by the plaintiffs, intervened in this action as a defendant.

Under Michigan law, individuals and associations can initiate legislation if they can obtain signatures from registered voters totaling eight percent of the total vote cast in the last gubernatorial election. Once the signatures have been collected, the signed petition forms are submitted to the Board, which is the body charged with determining whether the signatures on the petitions are valid and sufficient in number. If enough signatures on the petition comply with the requirements imposed by Michigan law, then the Board certifies the initiative to be processed in accordance with Michigan law.

In March, 1990, the Board approved the form of Taxpayers' proposed petition to initiate legislation. Taxpayers circulated the petition, obtained 224,048 signatures, and submitted the petition to the Board. A fair summary of the proceedings before the Board and the Michigan courts is as follows: the plaintiffs needed to collect, based upon the results of the most recent gubernatorial race, 191,726 valid signatures to get their proposal certified. After examining the 46,441 submitted petition sheets, the Board's staff disqualified a large number of signatures on the basis of statutory deficiencies as part of a process referred to in the record and by the parties as the "technical checks." An example of a signature eliminated by this process is a signature which was not accompanied, as required, by the signatory's complete home address. There remained 212,071 signatures after such invalid signatures were eliminated. Following its usual procedure, the Board's staff then chose a random sample of 1,599 signatures from these 212,071 signatures, and found that 210 of the 1,599 signatures were invalid for various reasons; e.g., the signatory was not in fact a registered voter. The Board's staff ultimately projected, based upon the results of this random sampling, that only 184,390 of the remaining 212,071 signatures on Taxpayers' petition were valid, that is, 7,336 fewer than the 191,726 required to certify the initiative. The staff presented its findings to the four-member Board. After holding several hearings on the sufficiency of the petition, the Board concluded that it could not certify the initiative.

Taxpayers and several individual plaintiffs (collectively referred to as "plaintiffs") then sought a writ of mandamus in the Michigan Court of Appeals to force the Board to certify the initiative. The court of appeals remanded the case to the Board and ordered it to recalculate the number of valid signatures using a larger random sample. The Board so re-examined the petition, but again found that there was a shortfall. Taxpayers returned to the court of appeals, but the court of appeals refused to remand again. Taxpayers sought appeal to the Michigan Supreme Court, but the court denied leave to appeal.

The plaintiffs then filed the instant § 1983 action in federal district court alleging that the state had deprived them of their First

and Fourteenth Amendment rights. Specifically, they contended that they had been denied their right to vote and their rights to assemble and to engage in political speech. They also raised due process and equal protection challenges, alleging that the state must prove that the Michigan procedure for reviewing the validity of initiative petitions is necessary to serve a compelling state interest. Plaintiffs did not allege, however, that the bases for removing names from the petition were different from those normally used by the Board or that the Board in any other way processed the petition differently from the way it generally processes petitions. In short, the plaintiffs do not allege any class-based discrimination or disparate treatment.

The defendants moved for dismissal of the complaint, arguing that the district court did not have jurisdiction because the complaint did not present a federal question. They further contended that the complaint did not state a claim upon which relief could be granted and also contended, alternatively, that they were entitled to summary judgment because the record showed without dispute that the plaintiffs were not entitled to relief.

The district court rejected the defendants' jurisdictional defense, but held that the plaintiffs' allegations did not state a claim for violation of their First or Fourteenth Amendment rights.[1] It reasoned that, as to jurisdiction, the federal Constitution does not guarantee the right to an initiative; however, once a state creates an initiative, the initiative becomes a means by which voters can communicate with other voters; therefore, the state must ensure that the process does not violate federal constitutional rights. The district court therefore held that there was jurisdiction because the complaint alleged a claim that was not, quoting *Duke Power Co. v. Carolina Envtl. Study,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978), "so

patently without merit as to justify ... the court's dismissal for want of jurisdiction." *See also Oneida Indian Nation v. Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Nevertheless, the court concluded that the contested provisions of Michigan law and the procedures followed by the Board do not violate the plaintiffs' First Amendment rights. The district court also rejected the equal protection and due process arguments: after noting that the right to vote was not implicated and that no suspect classification was involved, it concluded that the Michigan laws and the Board's procedures in processing the tendered supporting signatures were rationally related to Michigan's legitimate interest in ensuring that its initiatives are run honestly. The plaintiffs then filed this timely appeal.

## II

The state defendants argue (and Citizens also argues) that the district court did not have jurisdiction over this lawsuit.[2] Citing an unpublished order of this court and a couple of decisions from other jurisdictions, they point out, and plaintiffs do not dispute, that the right to initiative is created by state law and is not a right guaranteed by the federal Constitution. Therefore, the state defendants contend, this case presents no federal question. Taxpayers contends that, while a right to initiative is not guaranteed by the federal Constitution, once the state enacts an initiative procedure, there are constitutional limits on the way in which the state may administer the initiative. Thus, the plaintiffs contend, the district court had jurisdiction because they allege that the way in which the initiative was processed in this case violated the Constitution.

The plaintiffs assert jurisdiction under 28 U.S.C. § 1331, which gives the federal courts jurisdiction over causes of action arising un-

---

1. The district court was able to rule on plaintiffs' claims on the basis of the motion to dismiss rather than on the basis of the motion for summary judgment because the complaint and its numerous exhibits presented a sufficient record for such a ruling. The plaintiffs do not contend that, as a procedural matter, the court erred in making its ruling under Fed.R.Civ.P. 12(b)(6) rather than Fed.R.Civ.P. 56.

2. This court reviews *de novo* the question of whether it has subject matter jurisdiction. *Greater Detroit Resource Recovery Auth. v. United States Environmental Protection Agency,* 916 F.2d 317, 319 (6th Cir.1990).

der the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(4), which gives the federal courts jurisdiction over actions for money damages or equitable relief under any federal statute providing for the protection of civil rights, including the right to vote.

In an unpublished order of this court, *Lott v. Austin,* 1987 WL 38525, 1987 U.S.App. LEXIS 11163 (6th Cir. August 18, 1987), which is cited by the state defendants, this court affirmed the dismissal of a federal constitutional challenge to Mich.Comp.Laws Ann. § 168.472a, which is part of the statute regulating the initiative process. Concluding that the initiative process "is a creature of state law and is not a right secured by the federal Constitution," this court affirmed the dismissal of the complaint in that case for failure to present a federal question.[3] *Id.* at *1.

In support of this decision, this court cited two decisions from other jurisdictions: *Wright v. Mahan,* 478 F.Supp. 468 (E.D.Va. 1979), *aff'd without opinion,* 620 F.2d 296 (4th Cir.1980) and *Walgreen Co. v. Illinois Liquor Control Comm'n,* 111 Ill.2d 120, 94 Ill.Dec. 733, 488 N.E.2d 980, *appeal dismissed sub nom., Bober v. Walgreen Co.,* 476 U.S. 1180, 106 S.Ct. 2911, 91 L.Ed.2d 541 (1986) (appeal dismissed for want of a substantial federal question). In *Wright,* the Virginia case, the plaintiffs were attempting to have a proposition placed on the ballot. After exhausting their remedies in state court, the plaintiffs filed a lawsuit under § 1983 in federal court and premised jurisdiction on 28 U.S.C. § 1343(a)(3), which gives the federal courts jurisdiction over civil actions claiming deprivation of "any right, privilege, or immunity secured by the Constitution of the United States." 28 U.S.C. § 1343(a)(3) (1988). The defendants did not dispute jurisdiction, but did file a motion to dismiss for failure to state a claim. The court, however, considered the jurisdiction question *sua sponte* and concluded that "a right to petition for, have access to the ballot for, and vote in a municipal initiative election

is a wholly State created right" and is not a right secured by the First or Fourteenth Amendment. *Wright,* 478 F.Supp. at 474. Consequently, the court concluded that it did not have jurisdiction over the lawsuit, and dismissed it for lack of jurisdiction. *Id.* The Fourth Circuit, as stated, affirmed without opinion.

■ In *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), a case more recent than our unpublished decision in *Lott v. Austin,* 1987 WL 38525, 1987 U.S.App. LEXIS 11163 (6th Cir. August 18, 1987), the Court struck down a Colorado provision that made it a felony to pay anyone to circulate a petition to get an initiative placed on the ballot. A unanimous Court concluded that although the right to an initiative is not guaranteed by the federal Constitution, once an initiative procedure is created, the state may not place restrictions on the exercise of the initiative that unduly burden First Amendment rights. Although *Meyer* dealt with a limitation on communication with voters and not with methods used to validate and invalidate signatures of voters to an initiative petition, the principle stated in *Meyer* is that a state that adopts an initiative procedure violates the federal Constitution if it unduly restricts the First Amendment rights of its citizens who support the initiative. Accordingly, we conclude that although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution; therefore, we conclude, as did the district court, that the plaintiffs have stated a colorable claim under § 1983, giving the district court jurisdiction over this action. *Duke Power Co. v. Carolina Environ. Study,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Oneida Indian Nation v. Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

This does not mean, however, that the plaintiffs' claim can survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. The plaintiffs still must make allegations

---

**3.** Unpublished decisions of this court are of little precedential value. Sixth Circuit Rule 24(c); *Eyerman v. Mary Kay Cosmetics,* 967 F.2d 213, 218 (6th Cir.1992); *Hall v. Shipley,* 932 F.2d 1147, 1152 (6th Cir.1991).

that, if true, would state a violation of the First or Fourteenth Amendment. It is to this issue that we now turn.

## III

This court reviews *de novo* the district court's grant of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *G.M. Eng'rs & Assoc., Inc. V. West Bloomfield Township*, 922 F.2d 328, 330 (6th Cir.1990). "Whether the district court properly dismissed a complaint pursuant to Fed. R.Civ.P. 12(b)(6) is a question of law.... All factual allegations are deemed admitted, and when an allegation is capable of more than one inference, it must be construed in the plaintiffs' favor." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir. 1991). A Rule 12(b)(6) motion should only be granted if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

## IV

■ The plaintiffs first contend that Michigan's procedures deny them the right to vote. They contend that the act of signing a petition to get an initiative placed on the ballot is entitled to the same protection as voting. Since the Michigan procedure excluded the signatures of some registered voters only because the "technical checks" showed a failure to comply with Michigan initiative law, it is argued that those signatories have been unconstitutionally deprived of their right to vote. This, the plaintiffs contend, violates the equal protection guarantee because the "signature votes" of some registered voters are excluded for no valid reason.

We are not persuaded. The Supreme Court has held in a number of opinions that the right to vote is a fundamental right, *see, e.g., Kramer v. Union Free School Dist.*, 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969); *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); however, the plaintiffs do not cite to us nor does our research identify any decision of the Supreme Court or a lower federal court holding that signing a petition to initiate legislation is entitled to the same protection as exercising the right to vote.

In *Kelly v. Macon–Bibb County Bd. of Elections*, 608 F.Supp. 1036 (M.D.Ga.1985), a question presented was the constitutionality of a provision for a county referendum which required, to place the referendum on the ballot, a petition signed by registered voters who voted in the last general election. Supporters of the referendum presented a petition bearing signatures in sufficient number. The officials administering the referendum, however, excluded, as the statute required, signatures of persons who were not registered to vote in the county in the last general election and signatures of persons who had not so voted. In response to the contention that such action by the officials was in violation of the federal Constitution, the court stated:

> Plaintiffs, however, have not been prohibited from exercising a fundamental constitutional right. This is *not* a "right to vote" case; referendums, unlike general elections for a representative form of government, are not constitutionally compelled. The fluoridation program was implemented by an Act of the Georgia General Assembly. The state, consistent with the Constitution, could have directed that exclusions from the Act's coverage be available only by legislative action. By allowing an "opt out" procedure by way of local referendums, the state did not create a fundamental right protected by the federal Constitution. In establishing eligibility requirements for those voters authorized to call a local referendum by way of petition, the state may not discriminate on the basis of "suspect" classifications such as race. However, the classifications established by defendants' construction of § 12–5–175(a) do not involve such suspect classifications. There being no fundamental constitutional right to call a local referendum, defendants are not required to establish a compelling state interest in support of their construction of the challenged statute.

## V

■ We also conclude that the plaintiffs' rights to free speech and political association

have not been impinged. Because the right to initiate legislation is a wholly state-created right, we believe that the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation. Unlike the challenged provisions in *Meyer*, Michigan's initiative system does not restrict the means that the plaintiffs can use to advocate their proposal. Further, the Michigan procedure does not limit speech on the basis of content.

Moreover, as the Supreme Court has recognized in other contexts, a state has a strong interest in ensuring that its elections are run fairly and honestly. *Anderson v. Celebreeze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983). It also has a strong interest in ensuring that proposals are not submitted for enactment into law unless they have sufficient support. *See id.* at 788 n. 9, 103 S.Ct. at 1570 n. 9. The Michigan procedure does nothing more than impose nondiscriminatory, content-neutral restrictions on the plaintiffs' ability to use the initiative procedure that serve Michigan's interest in maintaining the integrity of its initiative process. Our result would be different if, as in *Meyer*, the plaintiffs were challenging a restriction on their ability to communicate with other voters about proposed legislation, or if they alleged they were being treated differently than other groups seeking to initiate legislation. But, in the instant case, we believe that it is constitutionally permissible for Michigan to condition the use of its initiative procedure on compliance with content-neutral, nondiscriminatory regulations that are, as here, reasonably related to the purpose of administering an honest and fair initiative procedure. Accordingly, we conclude that the plaintiffs' First Amendment claim is without merit.

## VI

█ █ The plaintiffs also contend that the Michigan laws violate their Fourteenth Amendment due process[4] and equal protection rights. With respect to the equal protection challenge, since no fundamental right is involved and the plaintiffs have not alleged that they are members of a suspect class, the Michigan provisions will pass muster if they are reasonably related to a legitimate government interest. *Moore v. City of East Cleveland*, 431 U.S. 494, 498, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1971); *Zielasko v. Ohio*, 873 F.2d 957 (6th Cir.1989) (applying rational basis scrutiny to challenge to electoral laws where no fundamental right or suspect classification was involved).

As stated, the plaintiffs basically contend that Michigan law violates their rights in five ways. They first contend that the form of the petition sheet, which requires signatories to give their full addresses, is irrational. We disagree. The Supreme Court recognized in *Anderson* that reasonable and nondiscriminatory regulation of elections is necessary to ensure that elections are run fairly and honestly. *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569. Requiring voters to put their full address on petitions is rationally related to Michigan's goal of keeping its elections fair because requiring a full address helps ensure that false signatures are not put on the petition and that unregistered voters do not sign it.

The plaintiffs, however, contend that these "technical checks" lead to irrational results because a number of registered voters were excluded from their petition merely because they did not give their full address, while at least some unregistered voters who did sign with their full addresses were counted toward the number required to submit the initiative to the legislature.[5] To avoid this result, the plaintiffs argue that the state should only use random sampling to test the validity of the signatures on the petitions and not the system of technical checks.[6]

---

**4.** It is clear that there has been no violation of the plaintiffs' procedural due process rights because the Board and the Michigan courts gave the plaintiffs all of the procedure that they were due.

**5.** However, it should be noted that the random sampling process used by the Board eliminated the signatures of some who, it was determined, were not registered.

•

**6.** Before the Board, the plaintiffs alleged that random sampling was an improper way to test the validity of signatures, yet before this court, they argue that it is the only proper way to test the validity.

As stated above, the Supreme Court has recognized that reasonable, nondiscriminatory regulation of elections is permissible because of the state's interest in preserving the integrity of its elections. *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569. We believe that the procedure that Michigan has adopted is just such legislation.

Moreover, since the plaintiffs have not alleged that any fundamental right or suspect classification is involved, it is irrelevant that the state could have chosen a better method of protecting its interest in guaranteeing an honest initiative system. *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981) ("The equal protection obligation ... is not an obligation to provide the best governance possible"). To uphold the Michigan procedure, we only must conclude that the method chosen is rational, and requiring a full address makes it easier for the Board to determine whether a voter is registered and whether a signature has been fraudulently placed upon the petition. Thus, the plaintiffs' first argument has no merit.

The plaintiffs next contend that it was irrational to disqualify 15,000 signatures merely because the petition forms on which a number of the signatories signed did not comply with the statutorily prescribed form. Michigan law requires all circulators of petitions to place a warning at the top of the petition forms informing potential signatories that, among other things, they cannot sign if they are not registered voters and cannot sign twice.[7] On a number of the petition forms, the warning had been moved to a different part of the form and had been printed in smaller type. Also, in some cases, the wording of the warning itself had been altered. Requiring persons who circulate petitions to include this warning on petition forms is rationally related to the state interest in keeping the initiative process fair: be-

cause it is impossible to canvass all of the signatures on a petition (there were 46,416 sheets of signatures to be examined in a relatively short period), warning potential signatories that they cannot sign twice or sign if they are not registered to vote is rationally related to Michigan's legitimate interest in reducing the number of invalid signatures on the petitions. Thus, the plaintiffs' argument has no merit.

The plaintiffs next argue that the Board should not have excluded 2,000 signatures merely because several circulators dated the petitions incorrectly. Michigan law requires circulators of initiative petitions to certify that to the best of their knowledge the signatures on the petition are genuine and that the petitions were signed only by registered voters. Mich.Comp.Laws Ann. § 168.-544c(3). Michigan law also requires that all signatures on a petition be dated within six months of the filing date of the petition. Mich.Comp. Laws Ann. § 168.544c(3).[8] Any signatures on petition forms that did not comply with these requirements were excluded from the final count.

The requirements outlined above are rationally related to the legitimate interests of ensuring that the signatories are registered voters, that the signatures are genuine, and that petitions may be quickly and accurately processed. Requiring a warning to be placed on petition forms and requiring circulators to certify that, to the best of their knowledge, no unregistered voters have signed the petition helps guarantee that fewer invalid signatures are placed on the petition. The requirement that signatures be dated within six months of the filing of the petition is rationally related to the state's interest in ensuring that the signatories still support the petition at the time the petition is submitted to the

---

7. The full warning provides: "Whoever knowingly signs this petition more than once, signs a name other than his or her own, signs when not a qualified and registered voter, or sets opposite his or her signature on a petition, a date other than the actual date on which the signature was affixed, is violating the provisions of the Michigan Election Law." Mich.Stat.Ann. § 6.1482 [M.C.L.A. § 168.482].

8. As examples, the plaintiffs submit three of the petition sheets containing signatures that were excluded. On one of the sheets, the circulator wrote the month and day that he signed the petition, but he did not put down the year. On another, the date the circulator put on the petition was a date after it had been submitted to the Board, and on the third, a signatory signed the petition on the day after the circulator signed it.

Board. Thus, this argument is also without merit.

Plaintiffs next contend that the practice in Michigan of excluding the signatures of any person who has signed the petition twice is irrational. In this case, 5,000 persons signed twice. The Board excluded both the first signature, and the subsequent duplicative signature. Excluding these signatures, however, is rationally related to Michigan's interest in protecting against fraud in its initiative system.

The plaintiffs' final contention is that the Board should have used only one method to test the validity of the signatures; they contend that using both a system of random sampling and using the so-called "technical checks" produces irrational results, so, the plaintiffs argue, the Board should have used only the random sampling technique.

In this case, the Board first screened the signatures to determine whether they complied with the technical requirements of Michigan law. Signatures that did not comply were excluded. The Board then took a random sample of the remaining signatures, determined how many of the signatures in that sample were invalid, e.g., the signatory was not actually registered to vote, and projected, based upon that sample, the number of valid signatures on the entire petition. The plaintiffs contend that using both of these methods together produced irrational results because, they contend, the Board excluded, by using the technical checks, many signatures of persons who were actually registered to vote.

We cannot see how using both technical checks and random sampling produced irrational results. As the district court stated, requiring, for example, that circulators of a petition place a warning on the petition forms and that signatories put their full addresses on the petition helps prevent unregistered voters from signing the petition. This, it seems to us, may even make the random sampling procedure more accurate.

Moreover, even if the method that Michigan has chosen to canvass its initiative petitions is not the best method, as stated above, under the rational relationship analy-

sis, a state is not required to use the best method for examining its petitions. A state is only constitutionally required to use a method that is rationally related to the legitimate interest of ensuring that an election is fair and honest. The system used by Michigan does just that.

## VII

Accordingly, we **AFFIRM** the district court.