**Jose NUNEZ, Plaintiff,**

v.

**Ernest V. CHANDLER, et al., Defendants.**

**Civil Action No. 99–228.**

United States District Court, E.D. Kentucky.

May 9, 2000.

Jose Nunez, Manchester, KY, pro se.

John S. Osborn, III, U.S. Attorney's Office, EDKY, Lexington, KY, for defendants.

## MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the court upon the motion of the defendants for dismissal or, in the alternative, for summary judgment [Record No. 25]; the motion is supported by a memorandum of law [Record No. 26], which has been supplemented by additional original declarations [Record No. 27]. The plaintiff has filed a response [Record No. 28], after which the defendants filed a motion for an extension of time in which to reply [Record No. 29] and, later, their reply [Record No. 30].

## BACKGROUND

The prisoner-plaintiff is a Cuban national who came to this country as part of the Mariel Boatlift in the early 1980's. He is currently incarcerated at FCI–Manchester serving a federal sentence of 262 months, to be followed by 5 years of supervised release, for Distribution of Cocaine, in violation of 21 U.S.C. § 841. His projected release date is February 10, 2014. Because he is a Mariel Cuban, the Immigration and Naturalization Service (INS) has lodge a detainer against him with prison authorities. With more than 39 months of clear conduct and a wish to be closer to his family in Miami, Florida, in July of 1998, the plaintiff requested and was approved locally for a transfer. However, his initial request to be transferred to FCI–Jesup, in Georgia, and later requests to be transferred to any medium security institution in the southeast region of the United States, were denied at the regional level.

On May 19, 1999, Nunez filed the original *pro se* complaint herein, alleging that he had been wrongly denied a transfer to a Bureau of Prisons (BOP) facility closer to his home, despite having complied with all applicable BOP policy. Attached documents obtained as the plaintiff appealed the matter administratively reveal that the plaintiff was denied a transfer due to population pressures at FCI–Jesup. The Regional Director also responded to his request to be transferred to any medium security institution in the southeast region by referencing BOP Program Statement (P.S.) 5111.02, which provides for INS review to determine release or detention when Mariel Cuban inmates are within 16 months of their projected release date; as plaintiff Nunez's projected release date is not until February 10, 2014, the decision regarding his release in the southeast area or anywhere would still be years away. The Regional Director also referred to BOP policy in P.S. 5100.06, which provides that nearer release transfers are ordinarily granted only to inmates who will be released into the United States.

The plaintiff also attached to his complaint a BOP population report, dated December 25, 1998, as support for his contention that the population reason for denying his transfer was pretextual. It reveals that FCI–Jesup, with a population of 991 inmates for a facility with a 744–person capacity, is over-crowded to the extent of

133 percent; FCI–Edgefield in South Carolina, in contrast, is only at 87 percent, with FCI–Mariana at 130 percent and FCI–Talladega in Alabama at 142 percent; all are lower than his current facility, FCI–Manchester, which is overcrowded at 143 percent. The plaintiff contends that the real reason that he was denied transfer is a discriminatory policy against Mariel Cuban detainees, in violation of the Equal Protection Clause of the Fifth Amendment and in contravention of BOP policy, which purports to encourage family visits. Also, because the plaintiff is a 63–year–old who may not survive the remainder of his sentence and his only sister has a spinal cord disability which makes it impossible for her to make the trip to visit him, the BOP's policy amounts to cruel and unusual punishment in violation of the Eighth Amendment. The plaintiff has sought a declaration, injunctive relief, and damages.

On July 20, 1999, this court noted that inmates have no constitutional right to be incarcerated in any particular institution, citing, *inter alia, Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), but ordered [Record No. 3] that the Clerk issue summons on the plaintiff's Fifth and Eighth Amendment claims that he was unfairly denied the transfer. The individually named defendants who denied his appeal of the transfer decision are Warden Ernest V. Chandler; Regional Director Margaret Hambrick; and Wendy J. Roal, the Administrator of National Inmate Appeals. The matter is now before the court upon the defendants' motion to dismiss or for summary judgment.

### *DEFENDANTS' MOTION*

In the memorandum [Record No. 26] in support of the defendants' motion, counsel provides copies of the relevant Program Statements; explains the attendant BOP policies with regard to transfers; and attaches declarations of the defendants and others in explanation of the policies, their underlying rationales and applications.

The defendants specifically deny any discrimination against Mariel Cubans, including the plaintiff. They contend that there are rational reasons for his being denied a transfer. The population pressures at all federal facilities in the southeast region (Georgia, Florida, South Carolina, Alabama, and Mississippi) make transfers extremely limited. The defendants explain that the occupancy rate of FCI–Jesup was lower than 100% in 1998 only because it was new at that time. They have updated the prison population figures with those from September 30, 1999, which show that FCI–Jesup has increased to 144 percent over capacity. [Declaration of Joseph Tang, attached exhibit [hereinafter "Ex."] A.] Moreover, they argue that population numbers alone do not accurately reflect the complexities of prison administration. [Declaration of Robert Massey.]

Therefore, with bed space at a premium, those who will occupy a bed for the shortest amount of time before release into that community are given priority. This would not include the plaintiff, as he desires to be in one of the southeast facilities for more than ten years. Additionally, the defendants contend that there are other rational reasons for the decision to not transfer him. Those with INS detainers are different from the rank and file of inmates, but not for race or ethnic reasons. [Declaration of Robert Massey.] The defendants assert that their treatment is a matter of their administrative classification. Mariel Cubans and other aliens close to the end of their prison sentences must be transferred to the Oakdale, Louisiana facility and undergo a review process by the INS to determine whether they will be released into the community or detained. Under P.S. 5111.02, this determination will not be made until 16 months before the release date; the rationale for this is explained as providing the maximum time for the alien to demonstrate good prison conduct before a decision is made.

At the time the INS makes its decision about whether to release the prisoner, under P.S. 5100.06, the policy has been that nearer release transfers would ordinarily be granted only to those who are to be released into the United States. Since the decision was made in the plaintiff's case, P.S. 5100.06 has been superseded by P.S. 5100.07, effective September 3, 1999, which now specifically so provides. *Id.,* Ex. B, at Chapter 10, page 4. The defendants contend that they followed the relevant policies, for which there have been rational bases. Additionally, earlier transfers are neither cost-effective nor administratively prudent; transport of prisoners involves attendant risks to personnel; and to grant such transfers would be contrary to the public interest because they would interfere with the current, orderly operation of the BOP and they would deluge the southeastern facilities.

The defendants' legal arguments include the following. Defendants Hambrick and Roal–Warner an entitled to dismissal on the grounds that this court lacks personal jurisdiction over them. All the defendants contend they are entitled to dismissal for lack of personal involvement, as the plaintiff's conclusory allegations that they merely approved or carried out policy do not meet the heightened proof requirement for *Bivens* actions, the defendants citing to *Shehee v. Luttrell,* 199 F.3d 295 (6th Cir.1999). The defendants also argue that the plaintiff has failed to state a claim with regard to either a violation of his Fifth Amendment equal protection or Eighth Amendment claims.

As to the relief requested, the defendants maintain that the plaintiff's request for declaratory relief is actually one for injunctive relief. Injunctive relief is precluded by the defendants' status as individuals; the plaintiff's failure to meet the requisite standards for injunctive relief; and the new provisions in 18 U.S.C. § 3626, effective with the signing of the Prison Litigation Reform Act on April 26, 1996. Finally, his claim for damages must fail because the defendants are entitled to qualified immunity.

## RESPONSIVE PLEADINGS

In his response [Record No. 28], the *pro se* plaintiff continues his previous arguments and points out that FCI–Edgefield is still less over-populated than FCI–Manchester. Additionally, the plaintiff complains that he should be treated as any other prisoner, despite his detainers, because he is not yet an INS detainee. The plaintiff also attacks the BOP policies as being unsound, as rehabilitation would be more successful close to an inmate's family. He counters their legal arguments by citing to case law purportedly standing for the proposition that federal officers can be held accountable in the district where their actions affect the claimant. The plaintiff argues that he is entitled to not being discriminated against and to having the BOP follow its own policy. Finally, the plaintiff contends for the first time that BOP policy is to house an inmate within 500 miles of home or family and yet he is being denied such a placement under the rubric of a transfer's being only a "nearer release" transfer.

After an appropriate motion for extension of time to address the new 500–mile argument, an extension which will be granted herein, the defendants have now filed a reply [Record No. 30]. They reiterate their main points and distinguish the case law cited by the plaintiff. As to the 500–mile argument, an attached declaration explains that the 500–mile language is a new provision in the P.S. 5100.07, previously provided and discussed. It is not a guarantee but a limitation, and it does not help those with INS detainers, as is expressly set out in the policy.

## DISCUSSION

### Proper Standards for Dismissal or Summary Judgment

Because the defendants have moved to dismiss for failure to state a claim upon

which relief can be granted and have presented matters outside the pleadings, the court shall treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b).

In determining a motion for summary judgment, the court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Id.* at 323, 106 S.Ct. 2548. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden on the plaintiff at that point is set out in Fed.R.Civ.P. 56(e), providing as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Id.* Summary judgment is properly granted if the party who would bear the ultimate burden of proof at trial fails to establish an essential element of the claim. *See Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548).

*Application to the Instant Case*

■ The court begins with the language of the statute, which requires the court to first examine the movant's motion for summary judgment to ensure that he has discharged the burden imposed upon him by Fed.R.Civ.P. 56(c). *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir.1991). The court must then turn to what the plaintiff has presented. As the instant plaintiff signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746, the facts averred to in the complaint have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993). Therefore, the court's focus is not only on his later submissions but on the complaint to determine if the plaintiff "has set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. 2505.

In the instant case, the court finds that the defendant has carried his burden of demonstrating that there is an absence of evidence to support either of the plaintiff's two constitutional claims. *Celotex Corp. v. Catrett*, 477 U.S. at 324–25, 106 S.Ct. 2548. The court agrees with the defendants that the plaintiff has failed to meet the necessary components to state either a Fifth Amendment claim that he was denied a transfer for a discriminatory purpose or an Eighth Amendment claim of conditions of confinement which subject him to cruel and unusual punishment.

■ As to the plaintiff's Fifth Amendment equal protection claim, the law is that where the plaintiff's status is not a suspect class for equal protection analysis, the lowest level of scrutiny applies to the

defendants' actions. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1067 (6th Cir.1994) (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 445–46, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Prisoners are not a suspect class; nor are classifications of prisoners. *See Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997). Therefore, this court need only determine whether the defendants' decision was rationally related to a legitimate government interest. *Taxpayers United v. Austin,* 994 F.2d 291, 297 (6th Cir.1993). The court finds that the defendants' decision to not grant the plaintiff a transfer was consistent with their policy and that their policy is clearly rationally related to legitimate governmental interests.

The plaintiff has submitted nothing undermining the government's position. He has not asserted that others similarly situated have been afforded favorable treatment. *See e.g., Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (equal protection requires that "all persons similarly circumstanced shall be treated alike") (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). Nor do the plaintiff's pleadings contain any specific examples of similarly situated inmates who have been treated differently in other institutions. The plaintiff has established no discrimination. He has simply been disappointed at being denied a transfer under valid BOP policies, which have numerous legitimate rationales.

Moreover, prison regulations adopted by prison administrators have a more deferential standard than the standard applied to congressional legislation. As a sister court has noted:

FN4. The Court has applied a more deferential standard to prison regulations adopted by prison administrators; such regulations impacting fundamental rights need only be "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. Compare *Thornburgh v. Abbott,* 490 U.S. 401, 410–414, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (Turner standard applied to regulations centrally concerned with the maintenance of order and security within prisons, specifically, restrictions upon prisoners' incoming mail) with *Procunier v. Martinez,* 416 U.S. 396, 413, 414, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (outgoing mail does not implicate concern for internal order; thus, a regulation providing for censorship of outgoing letters must "further an important or substantial governmental interest unrelated to the suppression of expression" and "no greater than is necessary or essential to the protection of the particular governmental interest involved.") As acknowledged in *Thornburgh,* both *Turner* and *Procunier* were premised upon the deference due prison officials and the recognition that the judiciary is "ill equipped to deal with the difficult and delicate problems of prison management." *Thornburgh,* 490 U.S. at 407–08, 109 S.Ct. 1874.

*Calhoun v. Detella,* 1997 WL 75658 (N.D.Ill.1997) (not reported in F.Supp.), slip op. at 4, n. 4. For all of these reasons, the plaintiff's Fifth Amendment equal protection discrimination claim is without a legal basis and will be dismissed.

■ The plaintiff has similarly failed to state a cognizable Eighth Amendment claim that he is being subjected to cruel and unusual punishment. The Constitution does not require that inmates be housed in comfortable surroundings. *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Not every unpleasant experience a prisoner might endure constitutes cruel and unusual punishment. *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir.1987) (per curiam). Conditions of confinement that are restrictive or harsh are not necessarily unconstitutional, but merely part of the penalty that criminal offenders must pay. *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). *See also Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir.1987)

(per curiam). Moreover, an Eighth Amendment analysis requires "both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?")." *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

In the instant case, it cannot be determined that the plaintiff has personally suffered any serious deprivation of a basic human need. Neither can it be determined that the plaintiff's conditions of confinement have inflicted or were intended to inflict wanton pain. The plaintiff's complaints do not establish the components of the Eighth Amendment analysis, do not rise to the level of an Eighth Amendment violation and, therefore, are to be dismissed. *See Lawler v. Marshall,* 898 F.2d 1196 (6th Cir.1990). Although the court does not diminish the plaintiff's loneliness at being separated so far from family, this is merely a part of the penalty that he, as a criminal offender, must pay.

Because the plaintiff has failed to establish any violation of his constitutional rights, his claims against the instant defendants must be dismissed. There is no issue of material fact and the defendants are entitled to judgment as a matter of law. Therefore, there is no need for this court to address the other defenses raised herein.

### CONCLUSION

Accordingly, IT IS ORDERED as follows:

(1) The defendants' motion for extension of time [Record No. 29] is GRANTED; and

(2) The defendants' motion for summary judgment [Record No. 25] is GRANTED, and a contemporaneous judgment shall be entered in their favor.