David **DAVENPORT** et al., Plaintiffs,

v.

**GENESEE COUNTY** et al., Defendants.

**Case No. 10–CV–13503.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 17, 2010.

F. Anthony Lubkin, Law Office of F. Anthony Lubkin, Owosso, MI, for Plaintiffs.

H. William Reising, Plunkett & Cooney, Peter M. Bade, City of Flint Legal Department, Flint, MI, Michael J. Hodge, Miller, Canfield, Lansing, MI, for Defendants.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [5]

ARTHUR J. TARNOW, Senior District Judge.

### I.  INTRODUCTION

Plaintiffs have filed this case claiming constitutional violations in the way Defendants have processed the petitions seeking to place the question of the recall of Mayor Walling on the November 2, 2010 ballot. Plaintiffs also claim that the challenge to their recall petitions filed by the entity "Friends of Dayne Walling" was invalid, as it was not filed by Dayne Walling himself.

Plaintiffs seek a preliminary injunction to compel Defendants to place the recall on the November ballot. Plaintiffs claim that the procedures used to verify the signatures on the recall petitions were arbitrary, which resulted in constitutional violations. They specifically claim that the Michigan recall laws as applied to them violated their First, Fifth, and Fourteenth Amendment rights.

The Court disagrees for the following reasons and denies the motion for preliminary injunction.

### II.  BACKGROUND

*Procedural History*

Plaintiffs filed a complaint in the Genesee County Circuit Court on August 31, 2010. Defendants then removed the case to this Court on September 2, 2010. On September 3, 2010, Plaintiffs filed a Motion for Preliminary Injunction that is now before the Court.

*Review Process*

The statutory period allowed for reviewing petitions is thirty-five days. TRO Hr'g Tr. 9, Sept. 9, 2010 [hereinafter TRO Tr. 1]. The petitions are first filed with the County Clerk, who has seven days to do a preliminary examination of the signatures. *Id.* The City Clerk has fifteen days to review the signatures for any defects. The official who is the subject of the recall has eight days to file a challenge. If there is a challenge filed, then the City Clerk has five additional days to review the challenged signatures. TRO Hr'g Tr. 9–11, Sept. 10, 2010 [hereinafter TRO Tr. 2]. On September 10, 2010, the parties stipulated that 8,004 signatures were required. *Id.* at 9.

*Facts*

The Committee to Recall Dayne Walling and Plaintiff Davenport collected signatures for petitions to recall the Flint mayor, Dayne Walling. They filed the petitions on July 29, 2010 with the County Clerk. TRO Tr. 1, 2. Plaintiffs submitted more than 14,000 signatures on the recall petitions. Tr. 2, 8. Plaintiffs received a receipt for submitting 13,738 signatures after 300 were invalidated for obvious statutory deficiencies. Within seven days of the submission of the petitions, the County Clerk rejected some of the signatures and 12,779 signatures were forwarded to the City Clerk. *Id.*

The City Clerk reviewed and removed more signatures leaving 8,267. TRO Tr. 1, 11. The County Clerk and City Clerk removed signatures if they did not meet the statutory requirements, if the signature did not match the signature in the voting file, or if other irregularities were present. *See* TRO Hr'g Tr., Sept. 14, 2010 [hereinafter TRO Tr. 3].

A challenge to the recall was raised with the County Clerk by an entity called "Friends of Dayne Walling". TRO Tr. 1, 11–12. Mayor Walling ratified the challenge made by the Friends of Dayne Walling that was made on his behalf.[1] Def. Carr's Resp. to Pls.' Mot. for Prelim. Inj., Ex. B at 3; *see also* TRO Tr. 2, at 6, 73. The County Clerk reviewed the challenge by the Friends of Dayne Walling. TRO Tr. 1, 12. On August 31, 2010, he determined that there were 7,484 valid signatures. *Id.* The Clerk's office then notified Plaintiffs and the challenger of the outcome in a letter dated August 31, 2010, the same day that Plaintiff filed suit in Genesee County Circuit Court. TRO Tr. 1, 12. The case was removed to this Court.

*Evidentiary Hearing*

This Court held three hearings on Plaintiffs' Motion for Preliminary Injunction, including an evidentiary hearing on September 14, 2010. The Clerk of the City of Flint testified. The Clerk serves as the chief election official for the City of Flint. The Clerk is responsible for reviewing recall petitions. This recall was handled the same as other recalls.

The Clerk testified that it is her office's policy to "err on the side of the voter" if there is an ambiguity. TRO Tr. 3, 49. She stated that her employees are trained and instructed to review petitions to make sure that they are properly completed. *See* TRO Tr. 3. They compare the signature on the petition with the original voter registration file.

The Clerk testified that she and her staff use codes to identify invalid signatures. The Secretary of State has identified acceptable invalidation codes. The Secretary of State has also afforded the local clerks with latitude in developing and

---

1. The Court accepted the ratification by Mayor Walling, rendering the challenge by the     Friends of Dayne Walling valid for the reasons stated on the record. TRO Tr. 2, 73.

using other invalidation codes. *Id.* at 49. The Clerk developed additional codes because "[she] want[ed] to be very clear in terms of why the signature was being disqualified as opposed to putting it in a miscellaneous category." TRO Tr. 3, 64.

## III. STANDARD OF REVIEW

Plaintiff is seeking injunctive relief to order the Genesee County Clerk to restore signatures stricken and to place the recall on the ballot for the November 2, 2010 election.

■ "A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo,* 241 F.3d 800, 826 (6th Cir.2001). The moving party has the "burden of proving that the circumstances clearly demand [an injunction]." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002).

■ When evaluating a motion for preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell,* 241 F.3d at 809 (quoting *Rock & Roll Hall of Fame v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998)).

## IV. DISCUSSION

No single factor is controlling of the outcome, although if "there is simply no likelihood of success on the merits" that is usually "fatal". *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### 1. Likelihood of Success on the Merits

#### a. Plaintiffs' Constitutional Claim

■ Plaintiffs claim that the statute M.C.L. § 168.958 as applied was unconstitutional. "A court may hold a statute unconstitutional either because it is invalid 'on its face'[2] or because it is unconstitutional 'as applied' to a particular set of circumstances." *Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 193 (6th Cir.1997). At this stage of the litigation the Plaintiffs do not have to show that they will succeed on the merits, but that there is a substantial likelihood that they will succeed on the merits.

#### b. Legal Framework— Recall Procedures

The Michigan State Constitution affords Michigan voters the right to recall "all elective officers except judges of courts of record" and identifies the minimum number of signatures required for a recall petition. Mich. Const., of 1963, art. II, § 8 (1963).

Recall procedures are generally governed by the Michigan Compiled Laws §§ 168.951–.976. M.C.L. § 168.954 states:

> A recall petition shall be signed by the registered and qualified electors of the electoral district of the official whose recall is sought. Each signer of a recall petition shall affix his or her signature, address, and the date of signing. A person who signs a recall petition shall be a registered and qualified elector of the governmental subdivision designated in the heading of the petition.

*Id.* at .954. Further, § 168.958 discusses the validity of the signatures on a recall petition, stating:

> A petition sheet shall contain only the signatures of qualified and registered

---

2. Here, Plaintiffs do not challenge the statutory scheme on its face.

electors of the city. . . . A qualified and registered elector may sign the petition sheet in any location at which the petition sheet is available. A petition is not invalid if it contains the signature of a person who is not a qualified and registered elector of the appropriate city ... listed in the heading of that petition sheet.

*Id.* at .958.

Specific procedures on recall issues are administratively handled by the Secretary of State, through the Bureau of Elections, and local clerks' offices. The State has published various guides for recall procedures.

### c. Analysis

Here, Plaintiffs have not met their burden of showing that there is a strong likelihood that they will succeed on the merits. Plaintiffs have not shown that M.C.L. 168.958 was applied to them in a fashion that violated their constitutional rights.

Plaintiffs allege that Defendants inappropriately removed too many signatures, thus wrongfully rejecting the recall petitions in violation of their First, Fifth, and Fourteenth Amendment rights. Plaintiffs specifically contest various practices by the City and County Clerks: 1) the use of invalidation codes, such as "NHS" (meaning "Not His/Her Signature") among others. 2) The disqualification of signatures based on the use of ditto marks in certain sections of the petitions. 3) The invalidation of signatures because of various other irregularities.

Defendants maintain that the Clerks followed the proper laws in reviewing the recall petitions. The Court agrees.

In the case of *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir.1993), voters challenged the denial of ballot certification of an initiative petition after a large number of signatures were invalidated by the Board of State Canvassers due to statutory deficiencies. *Austin*, 994 F.2d at 293–94. Plaintiffs filed a 42 U.S.C. § 1983 action alleging a violation of their First and Fourteenth Amendment rights. *Id.* Plaintiffs argued that they were denied their right to vote by the exclusion of some registered voter signatures because "technical checks" showed a failure to comply with the Michigan laws on initiatives. *Id.* at 296. The court held that the plaintiffs' right to vote was not violated because there is no authority that holds the signing of a petition to initiate legislation is entitled to the same protection as exercising the right to vote. *Id.*

The *Austin* court also held that the plaintiffs' First Amendment rights had not been violated. The court stated that since "the right to initiate legislation is a wholly state-created right, we believe that the state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation." *Id.* at 297. The court found that Michigan's initiative "procedure does nothing more than impose nondiscriminatory, content-neutral restrictions on the plaintiffs' ability to use the initiative procedure that serves Michigan's interest in maintaining the integrity of its process." *Id.* Further, the court stated that "it is irrelevant that the state could have chosen a better method of protecting its interest in guaranteeing an honest initiative system." *Id.* at 298 (citing *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981)).

Similarly, here, Plaintiffs challenge the application of Michigan recall law, a state-created right, and the removal of petition signatures for various reasons. Plaintiffs especially take issue with the review methods that were used by the local clerks where the law was silent as to

the exact procedure. Plaintiffs have not shown that the procedures used were inconsistent with Michigan recall law, nor have they shown that the review method used by the local clerks with respect to their specific recall petitions was discriminatory, arbitrary, or deliberately designed to harm Plaintiffs.

Plaintiffs argued that the local clerks used "rogue codes" that were not specifically approved by the Secretary of State. However, Plaintiffs have not shown any evidence suggesting that the use of alternate codes is unlawful. In fact, the Clerk of the City of Flint testified that she was "given latitude" with respect to using more specific codes as a way to mark invalidated signatures. TRO Hr'g 3, 48. Further, Plaintiffs have not shown how the codes used violated their constitutional rights. In fact, the Clerk stated that she used the additional codes in order to be more clear instead of using a miscellaneous code.

Plaintiffs also argued that the disqualification of petition signatures because of the use of ditto marks in some of the fields of the form was improper. However, according to the Michigan Bureau of Elections, "in any instance where a signer enters ditto marks in the residential address entry or the date entry, the signature is invalid and *not* counted." BUREAU OF ELECTIONS, MICHIGAN RECALL PROCEDURES: A GENERAL OVERVIEW (2008), *available at* http://www.michigan.gov/documents/sos/ Recall_Procedures2_211779.pdf (emphasis in original). This practice is not unconstitutional.

Plaintiffs raised many general concerns with the signature review procedures with respect to the interpretation of the way a number was written, signatures of people with common names with a change of address, and more. However, it is not up to the Plaintiffs or the Court to establish signature review procedures. Although Plaintiffs have shown that there are some people whose signatures were valid yet invalidated erroneously, Plaintiffs have not shown deliberate error or evidence of an arbitrary process.

Similar to the *Austin* case, here, Defendants are not required to use the best method of signature review. Human error is sometimes part of the process. Deference must be given to the local clerks. Even if the Clerk had wrongfully interpreted or misapplied the law, her actions would not rise to a Fourteenth Amendment violation, which could only be established with a showing of discrimination on her part. *See Ventre v. Ryder*, 176 F.Supp. 90, 94–95 (D.C.La.1959).

Plaintiffs have not met their burden of showing that there is a substantial likelihood that they will succeed on the merits.

## 2. Irreparable Harm

Plaintiffs argue that in the absence of a preliminary injunction they will suffer irreparable harm. Had Plaintiffs shown that there was deliberate action by Defendants to strike valid signatures or that the review method used by the clerk was arbitrary, then the issue of irreparable harm would have been a clear factor in favor of the Plaintiffs because of the three month delay between the November and February election dates. If the potential three month delay were the only factor in deciding this issue, then it would probably weigh in favor of Plaintiffs. However, Plaintiffs did not meet their burden, nor have they shown that they will suffer irreparable harm if the injunction is not issued.

## 3. Substantial Harm to Others

Plaintiffs contend that the preliminary injunction would not cause substantial harm to others because "[e]ither way, ballots will have to be printed...." Pls.' Reply 12. Defendants argue that due to the

tight timetables surrounding elections, that the deadline for the ballot to be printed has already passed. Thus, there would be additional costs associated with the ballot printing. However, Defendants have not established that the extra costs would result in "substantial harm" to the State. Consequently, this factor cannot weigh against the granting of a preliminary injunction.

### 4. Public Interest

Plaintiffs argue that the public interest would be served by the issuance of a preliminary injunction because it would vindicate the rights of those who validly signed the recall petition. Plaintiffs argument is not without merit. However, it fails to consider the interests of the majority of voters that elected Mayor Walling.

■ More importantly, it ignores the State's "strong interest in ensuring that its elections are run fairly and honestly." *Austin,* 994 F.2d at 297 (citing *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (citing *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)). This factor weighs against the issuance of the injunction.

### V. CONCLUSION

Although Plaintiffs have shown that there may have been some errors by Defendants in removing valid signatures, Plaintiffs have not met their burden in showing that the issuance of a preliminary injunction in this case is warranted.

For the reasons discussed above, and the Court being fully advised in the prem-

ises, Plaintiffs' Motion for Preliminary Injunction must be denied.

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.